FILED

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

00 MAR 10 PM 4:30

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| INTERGRAPH CORPORATION, | ] | |
| | ] | |
| Plaintiff(s), | ] | |
| | ] | |
| vs. | ] | CV-97-N-3023-NE |
| | ] | |
| INTEL CORPORATION, | ] | |
| | ] | |
| Defendant(s). | ] | |

ENTERED

MAR 1 0 2000

## Memorandum of Opinion

This memorandum addresses the continuing viability of Intergraph's remaining antitrust claims after the United States Court of Appeals for the Federal Circuit vacated the Preliminary Injunction entered by this court on April 10, 1998. *Intergraph Corp. v. Intel Corp.*, 195 F.3d 1346, 1362 (Fed. Cir. 1999). Since the Federal Circuit opinion was rendered, the court has requested and received from the parties written statements regarding their respective positions on the antitrust claims. After reviewing these submissions, the court requested additional briefs on the law of the case doctrine and how that doctrine would impact the remaining antitrust claims.[1] Moreover, the parties have been heard orally, and Intel has moved in open court for summary judgment based upon the opinion of the Federal Circuit as to any and all of the plaintiff's remaining antitrust claims. After some wavering and

---

[1] At the request of the court, the parties also submitted for the court's review the briefs they filed with the Federal Circuit on Intel's appeal of this court's preliminary injunction order. The court believed that it would be helpful to review these briefs to better determine the precise issues presented on the appeal and the context in which that court rendered its opinion.



uncertainty, it is now clear that Intergraph claims only that it is entitled to pursue a claim that Intel has unlawfully maintained a monopoly in the computer microprocessor market.

The court having carefully considered all these matters, finds that Intel's motion for summary judgment should be granted. The opinion of the Federal Circuit effectively forecloses Intergraph's further pursuit of its monopoly maintenance claim. The motion for summary judgment will be granted and the remaining antitrust claim will be dismissed with prejudice.

Intel argues that Intergraph has no anti-trust claims following the opinion or the Federal Circuit because that court concluded that Intergraph could not demonstrate anti-competitive conduct by Intel in any market in which Intergraph and Intel compete and because it further held that a holder of intellectual property has the right to refuse to deal or license that intellectual property to any other entity without running afoul of the antitrust laws except in very limited circumstances. On the other hand, Intergraph asserts that it may still pursue its claim that Intel has unlawfully maintained a monopoly in the relevant market for computer microprocessors. According to Intergraph, the Federal Circuit did not foreclose its monopoly maintenance claim because that claim was not before the appeals court and, thus, could not have been the subject of any ruling by that court.[2/] Contrary to

---

[2/]Intergraph also contends that "there is new, substantially different evidence supporting the claim that was not available in the limited preliminary injunction record reviewed by the Federal Circuit." Intergraph's brief regarding law of the case (Doc. No. 425) at 1. Intergraph argues that this evidence consists of the Federal Trade Commission's antitrust action and consent decree against Intel. *Id. at 2.* However, Intergraph's brief to the Federal Circuit contains an entire section entitled "Subsequent Federal Trade Commission Proceedings Challenging Intel's Misuse of Monopoly Power." Brief for Plaintiff-Appellee Intergraph Corporation at 12-14. Intergraph cites to and discusses the FTC's proposed complaint and consent decree in *In the Matter of Digital Equipment Corp.,* and the administrative complaint filed by the FTC in *In the Matter of Intel Corp.,* both of which seemingly deal with Intel's alleged unlawful maintenance of a monopoly in the microprocessor market. Although Intergraph may have obtained more evidence related to the FTC's actions, the Federal Circuit was certainly aware of the actions as Intergraph discussed them at length in its brief to the Federal Circuit.

Intergraph's position, the court finds that the Federal Circuit did address the claim that Intel

has unlawfully maintained a monopoly in the computer microprocessor market and that it

did so in such a way as to preclude its further litigation in this action.

## I. Law of the Case Doctrine.

On the subject of the law of the case doctrine, the Federal Circuit has said:

> The law-of-the-case doctrine is well established in the patent jurisprudence
> of this court. *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 900-
> 01, 221 USPQ 669, 678-79 (Fed. Cir.), *cert. denied,* _____ U.S. _____, 105 S.Ct.
> 187, 83 L.Ed.2d 120 (1984); *Central Soya Co. v. Geo. A. Hormel & Company*,
> 723 F.2d 1573, 1580-81, 220 USPQ 490, 495 (Fed. Cir.1983). The doctrine is
> that as a matter of sound judicial practice, under which a court generally
> adheres to a decision in a prior appeal in the case unless one of three
> "exceptional circumstances" exists: "the evidence on a subsequent trial was
> substantially different, controlling authority has since made a contrary
> decision of the law applicable to such issues, or the decision was clearly
> erroneous and would work a manifest injustice." *Central Soya, supra*, 723
> F.2d at 1580, 220 USPQ at 495, *quoting from Short v. United States*, 661 F.2d
> 150, 154, 228 Ct.Cl. 535 (Ct.Cl.1981), *cert. denied sub nom. U.S. v. Short and
> Hoopla Valley Tribe of Indians v. Short*, 455 U.S. 1034, 102 S.Ct. 1738, 72
> L.Ed.2d 153 (1982). *United States v. Turtle Mountain Band of Chippewa
> Indians*, 612 F.2d 517, 222 Ct.Cl. 1 (1979). The doctrine is designed "to
> provide finality to judicial decisions." *Turtle Mountain Band of Chippewa
> Indians*, 612 F.2d at 521.

*Smith International, Inc. v. Hughes Tool Co.*, 759 F.2d 1572, 1576, 225 U.S.P.Q. 889 (Fed. Cir.

1985). In *Aydin Corporation v. Widnall*, No. 96-1267, 1997 WL 413329, at *3 (Fed. Cir. July

24, 1997), the Court further stated:

> [T]he trial tribunal . . . "has no power or authority to deviate from the mandate
> issued by an appellate court." *Briggs v. Pennsylvania R. Co.,* 334 U.S. 304, 306
> (1948)*; See In re Roberts*, 846 F.2d 1360, 1363 (Fed. Cir. 1988) ("Unlike the
> authority to reconsider its own rulings, a district court is without choice in
> obeying the mandate of the appellate court."); *see also Northern Helex Co.
> v. United States*, 634 F.2d 557, 560 (Ct.Cl. 1980). The mandate constitutes the
> law of the case on issues that were either explicitly or implicitly decided by
> the appellate tribunal. *See Exxon Corp. v. United States*, 931 F.2d 874, 877 n.

7 (Fed. Cir. 1991) (citing 1B James W. Moore, Moore's Federal Practice ¶ 0.404[10] at 172-174 (2d ed. 1988)). Thus, a trial court on remand may not reexamine, beyond the scope of the remand order, any issues that were addressed, either explicitly or implicitly, by an appellate court.

If, as is probably true, because these issues relate to antitrust claims, the Federal Circuit would apply the law of the Eleventh Circuit, the rule is similar. In decisional authority binding on this court, the Fifth Circuit[3] has written that "[t]his and other courts . . . have developed the doctrine known as the law of the case: once a case has been decided on appeal, the rule adopted is to be applied, right or wrong, absent exceptional circumstances, in the disposition of the lawsuit." *Schwartz v. NMS Industries, Inc.* 575 F.2d 553, 554-555 (5th Cir. 1978); *see also, Royal Ins. Co. v. Quinn-L Capital Corp.*, 3 F.3d 877, 880-881 (5th Cir. 1993) (holding that ruling on appeal from entry of preliminary injunction establishes law of the case as to legal issues actually determined though the same rule may not apply to factual questions).

As the Fifth Circuit explained in *White v. Murtha*, 377 F.2d 428 (5th Cir. 1967):

The "law of the case" rule is based on the salutary and sound public policy that litigation should come to an end. It is predicated on the premise that "there would be no end to a suit if every obstinate litigant could, by repeated appeals, compel a court to listen to criticisms on their opinions or speculate on chances from changes in its members," and that it would be impossible for an appellate court "to perform its duties satisfactorily and efficiently" and expeditiously "if a question, once considered and decided by it were to be litigated anew in the same case upon any and every subsequent appeal" thereof.

While the "law of the case" doctrine is not an inexorable command, a decision of a legal issue or issues by an appellate court establishes "the law of the case" and must be followed in all subsequent proceedings in the same

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), the United States Court of Appeals for the Eleventh Circuit, sitting en banc, adopted the law of the former Fifth Circuit as controlling precedent in this Circuit.

case in the trial court or on a later appeal in the appellate court, unless the
evidence on a subsequent trial was substantially different, controlling
authority has since made a contrary decision of the law applicable to such
issues, or the decision was clearly erroneous and would work a manifest
injustice. (Footnotes omitted).

*Id.* at 431-32. Presumably, all the parties agree that this court is bound to follow and apply

the mandate of the Federal Circuit to the extent its opinion is applicable to the legal issues

in this action.

## II. The Federal Circuit's Decision.

As an initial matter, the court notes that in an email directed to the court on January

10, 2000, Mr. William Jaeger, one of Intergraph's antitrust counsel stated:

> The Federal Circuit acknowledges and recognizes that Intergraph made a
> claim for illegal monopolization of the microprocessor market. The Federal
> Circuit specifically states that this court "concluded that Intel has willfully
> acquired and maintained monopoly power in the high-end microprocessor
> market." 195 F.3d at 1354. The Federal Circuit cited the same controlling
> Supreme Court precedent relied on by this Court (the Aspen Skiing and
> Grinnell cases) which held that a "monopolization" claim can be proven by
> showing "willful acquisition or maintenance of [monopoly] power." Id. at
> 1353.

Email from Mr. Jaeger to the court (Docket No. 403).[4] To be sure, the Federal Circuit

recognized that the district court "found a *prima facie* case of market power based on

Intel's market share of high performance microprocessors, and concluded that Intel had

willfully acquired and maintained monopoly power in the high-end microprocessor market,

---

[4] Because of the nature and size of this case, it has required more or less constant communications
between the court and counsel. The court has found email to be a practical and effective means to quickly and
reliably carry on that communication. When email messages have contained matters of substance they have been
printed and placed in the clerk's file. An example of the sort of communications that have taken place by email
was the court's request that the parties submit copies of the briefs filed in the Federal Circuit. A letter or a formal
order would have taken a few days. As it was, the court used about three minutes to type a short request and send
it to counsel. The briefs were submitted to the court within one day.

although the record did not show an effect on competition in any market in which Intergraph competes with Intel." *Intergraph*, 195 F.3d at 1354.  The Federal Circuit noted that "[t]he prohibited conduct must be directed toward competitors and must be intended to injure competition. . . .  Such conduct must affect the relevant product market, that is, the 'area of effective competition' between the defendant and plaintiff." *Id.* at 1353.  The Federal Circuit went on to remind the parties of the holding in *U.S. Anchor Mfg., Inc. v. Rule Industries, Inc.*, 7 F.3d 986, 999 (11th Cir. 1993), that "the court did not eliminate the requirement that plaintiff and defendant compete in the relevant market; that fundamental premise underlies *U.S. Anchor. Id.*  Accordingly, the Federal Circuit held that:

> The district court found that Intel possessed monopoly power in two "relevant markets:"   (1) the market for high-end microprocessors, and (2) the submarket of Intel microprocessors.   Neither one is a market in which Intergraph and Intel are in competition with each other.  Intergraph states that it competes in the microprocessor market by virtue of its Clipper patents.  However, the patent grant is a legal right to exclude, not a commercial product in a competitive market.  Intergraph abandoned the production of Clipper microprocessors in 1993, and states no intention to return to it.  Firms do not compete in the same market unless, because of the reasonable interchangeability of their products, they have the actual or potential ability to take significant business away from each other.

*Id.* at 1355.

As to Intel being a monopolist, the Federal Circuit found that "even if the district court's view of Intel as a monopolist were accepted, as stated in *Mr. Furniture Warehouse, Inc. v. Barclays American/Commercial Inc.*, 919 F.2d 1517, 1522 (11th Cir. 1990), 'to constitute a violation the monopolist's activities must tend to cause harm to competition; unrelated harm to an individual competitor <u>or consumer</u> is not sufficient." 195 F.3d at 1356 (emphasis added).  Finally, the Federal Circuit found that "[a]s we have discussed, the

presence of a competitive relationship is fundamental to invoking the Sherman Act to force access to the property of another," *id.* at 1357, and that "[t]he district court herein recognized that there must be an anticompetitive intent, but ignored the absence of competition between Intel and Intergraph." *Id.* at 1363. Based on these passages from the Federal Circuit's opinion, the court finds that there is an underlying theme in the Federal Circuit's opinion:  that Intergraph and Intel do not compete in the same market, and therefore, Intergraph has no maintenance of monopoly antitrust claim against Intel under section 2 of the Sherman Act.

Another basis for determining that Intergraph has no maintenance of monopoly claim is the Federal Circuit's repeated statements dealing with a patentee's right to exclude others from its intellectual property: "the antitrust laws do not negate the patentee's right to exclude others from patent property." *Id.* at 1362. The Federal Circuit also stated that it has found no reported cases in which a court has imposed antitrust liability for a unilateral refusal to sell or license a patent or copyright, and rather, the Federal Circuit cites to cases, such as *Miller Insituform, Inc. v. Insituform of North Am., Inc.*, 830 F.2d 606, 609 (6th Cir. 1987), which held that "[a] patent holder who lawfully acquires a patent cannot be held liable under section 2 of the Sherman Act for maintaining the [market] power he lawfully acquired by refusing to license the patent to others." *Id.* at 1362-63.[5/] The Federal Circuit also cited to 35 U.S.C. § 271(d)(4), which states that "[n]o patent owner otherwise entitled to relief for infringement or contributory infringement of a patent shall be denied relief or

---

[5/]*See also, United States v. Westinghouse Elec. Corp.*, 648 F.2d 642, 647 (9th Cir. 1981) (patent holder has the "untrammeled" right to license or not, exclusively or otherwise"), cited by the Federal Circuit at 195 F.3d 1363.

deemed guilty of misuse or illegal extension of the patent right by reason of his having done

one or more of the following: . . . . (4) refused to license or use any rights to the patent." *Id.*

at 1362. Finally, the Federal Circuit held:

> However, as we have stated, the owner of proprietary information has no obligation to provide it, whether to a competitor, <u>customer</u>, or supplier. Precedent makes clear that a <u>customer</u> who is dependent on a manufacturer's supply of a component can not on that ground force the producer to provide it; there must also be an anticompetitive aspect invoking the Sherman Act.

*Id.* at 1363. (emphasis added). Clearly, the Federal Circuit considered the possibility of

Intel and Intergraph having a relationship, other than as direct competitors, and still found

that no antitrust claim could lie.

Of particular significance on this issue is the Federal Circuit's recent decision in *In*

*re Independent Service Organizations Antitrust Litigation*, No. 99-1323 (Fed. Cir. Feb. 17,

2000), in which it referenced its decision in this matter. In *Independent Service*

*Organizations*, the Federal Circuit held that "[i]n the absence of any indication of illegal

tying, fraud in the Patent and Trademark Office, or sham litigation, the patent holder may

enforce the statutory right to exclude others from making, using, or selling the claimed

invention free from liability under the antitrust laws." *Id.* at 10. Intergraph has not claimed

that Intel is guilty of the disqualifying factors set out in *Independent Service Organizations.*

Thus, if anything, the *Independent Service Organizations* decision removes any remaining

ambiguity concerning the impact of the *Intergraph* decision on the plaintiff's maintenance

of monopoly claims in this court.

8

## III.  The Parties' Briefs.

In reviewing the briefs presented to the Federal Circuit, the court finds several sections worthy of note.  First, in Intel's brief, it argues: "the record provides legally-insufficient grounds to support a finding that Intel has monopoly power in either of the alleged relevant primary markets (high-end CPUs or Intel-branded CPUs) identified by the district court.  For the first market, there are no market shares showing that Intel has monopoly power.  The second is simply not a cognizable antitrust market under Eleventh Circuit precedent."  Brief of Defendant-Appellant Intel Corporation at 10.  Intel later states that:

> [a]lthough the district court premises its antitrust analysis on an unsupported assumption that Intel is a monopolist in a primary microprocessor market . . . and discusses whether that alleged monopoly was unlawfully acquired or maintained, the court's resulting injunction cannot be supported by that theory.  An injunction requiring Intel to supply Intergraph with Intel's proprietary CPU material cannot affect Intel's supposed microprocessor monopoly because Intergraph does not compete in the sale of microprocessors.  To justify relief, the district court needed to find a market in which Intel and Intergraph are alleged rivals.

*Id.* at 15.  Finally, Intel devotes an entire section to discussing "The District Court's Finding of Monopoly Power in Two Primary Markets Constitutes Reversible Error." *Id.* at 32-34.

There are several sections in Intergraph's brief which make reference to and/or discuss Intergraph's antitrust claim of maintenance of a monopoly in the microprocessor market.  Of specific significance, Intergraph has a section entitled "Intel's Unlawful Acquisition And Maintenance Of Monopoly Power," and there engages in an extended discussion of Intel's claimed monopoly power in the microprocessor market.  Brief for Plaintiff-Appellee Intergraph Corporation at 28.  Specifically, Intergraph argued that it "need

9

not establish that Intel acquired its monopoly unlawfully; it is enough to show that Intel has misused or maintained that monopoly," and that "the district court found that Intel already monopolized the relevant microprocessor markets, and acted unlawfully to maintain that monopoly." *Id.* at 30-31. (emphasis in original). Intergraph went on to state that it

> threatened Intel's "core business" . . . – i.e., Intel's microprocessor monopoly -- with a patent claim Intel could lose. As the district court found, this retaliation against a patent owner for legitimately asserting its patents was not a valid justification for a monopolist to cut off supply of essential products and information to a customer with no alternatives. None of the cases cited by Intel for this "justification" involved a monopolist.

*Id.* at 32. (citations omitted). Intergraph also challenged Intel's argument that it had a right to exclude Intergraph from its intellectual property. The Federal Circuit accepted Intel's argument. The most damaging portion of Intergraph's brief was:

> Intel asserts that Intergraph cannot challenge Intel's monopolization of the micro-processor market, because Intergraph is not currently a direct competitor in that market.  This ignores the dynamics of Intel's anticompetitive actions over time, and the serious harm to competition and innovation. The district court found that Intel induced Intergraph to exit the microprocessor market in 1993 through false assurances and commitments. The court further found that after Intergraph was "locked-in" to Intel's microprocessors and could not feasibly re-enter the microprocessor market, Intel cut Intergraph off from essential CPUs and product information and insisted that Intergraph relinquish all its patented cache memory technology (incorporated in Intel's microprocessors) to Intel for free. Intel's coercive use of monopoly power to appropriate all microprocessor technology to itself impairs and chills incentives to compete or innovate in the microprocessor market.  It also impeded Intergraph from selling or licensing its technology to rivals or competitors of Intel.  This had the obvious purpose and effect of enhancing Intel's monopoly in the microprocessor market. Consumers are injured because Intel maintains its monopoly by eliminating innovation or competition that might threaten it.

*Id.* at 35-36 (emphasis added). Obviously, the Federal Circuit, on the basis that Intergraph and Intel were not competitors in that market, rejected Intergraph's argument that it had a

maintenance of monopoly claim in the microprocessor market. More importantly, the Court recognized no exceptions to its broad conclusion that Intel's market share in the microprocessor market was "irrelevant" because Intergraph does not compete in the microprocessor market. Actually, the Federal Circuit recognized Intel's argument "that it is not in competition with Intergraph in any relevant market; that its relationship with Intergraph is that of supplier and customer, not competitor." 195 F.3d at 1354 (emphasis added). In recognizing such a relationship, the Federal Circuit did not, at any point in its opinion, acknowledge that Intergraph could still maintain an antitrust claim against Intel based on such a relationship.

Lastly, Intergraph concluded this section of its brief by stating "[b]ecause Intel's actions thwart the purposes of both the antitrust and intellectual property laws, Intergraph has a strong claim for unlawful maintenance of monopoly power by Intel, and a substantial likelihood of prevailing on the claim at trial." Brief for Plaintiff-Appellee Intergraph Corporation at 36. Clearly, based on this section alone, Intergraph squarely placed its maintenance of a monopoly antitrust claim before the Federal Circuit.

Finally, in reviewing Intel's reply, several sections address the maintenance of monopoly claim, presumably because Intergraph devoted a substantial amount of discussion to the claim in its brief. This record and the language of the appellate opinion compels the conclusion that Intergraph's claim of monopoly maintenance in the computer microprocessor market was clearly before the Federal Circuit and it was in that context that the court rejected the claim for lack of any evidence of competition between Intergraph and Intel in that relevant market.

11

## IV. Conclusion.

Having reviewed the Federal Circuit's opinion in conjunction with the parties' briefs on the law of the case doctrine, their briefs to the Federal Circuit, and having heard oral argument on the issues, the court concludes that a claim by Intergraph against Intel for maintenance of a monopoly in the computer microprocessor market is not viable and must be dismissed. Accordingly, Intel's summary judgment will be granted on this last remaining antitrust claim.

A separate order consistent with this opinion will be entered contemporaneously herewith.  Because of the importance of the issue to the parties and because the court sees no just reason to delay, the Clerk of the Court will be specifically directed to enter final judgment pursuant to Rule 54(b), Fed. R. Civ. P.

Done, this ____ of March, 2000.


_____
EDWIN NELSON
UNITED STATES DISTRICT JUDGE